UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:

LAURIE A. WAGNER,

                              Debtor.

-------------------------------------------------------------------x

WALTER G. WAGNER,

                              Plaintiff,

               – against –

LAURIE A. WAGNER,

                              Defendant.

-------------------------------------------------------------------x

Case No. 14-74245 (AST)

Chapter 7

Adv. Pro. No. 14-08291 (AST)

## <u>NOTICE OF PRESENTMENT OF AN</u>
## <u>ORDER DIRECTING ENTRY OF A DEFAULT JUDGMENT</u>

**PLEASE TAKE NOTICE,** that upon the affirmation of Michael J. Macco, Esq., executed on December 11, 2014, and the exhibits annexed thereto (the "Motion"), Walter G. Wagner, the above-referenced plaintiff (the "Plaintiff"), will present an order before the Honorable Alan S. Trust, United States Bankruptcy Judge, United States Bankruptcy Court, Long Island Federal Courthouse, 290 Federal Plaza, Central Islip, New York 11722 on **January 12, 2015 at 10:00 a.m.,** or as soon thereafter as counsel can be heard, for the entry of a default judgment against Laurie A. Wagner, the above-referenced defendant (the "Defendant"), pursuant to Rule 7055 of the Federal Rules of Bankruptcy Procedure and Rule 55 of the Federal Rules of Civil Procedure determining that the debts Defendant owes the Plaintiff are non-dischargeable under 11 U.S.C. §§523(a)(5) and (15), together with such other and further relief as this court deems just and proper (the "Order").

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the Motion or the relief requested in the proposed Order must be (i) made in writing; (ii) electronically filed with the Court; (iii) mailed to the Chamber of the Honorable Alan S. Trust, United States Bankruptcy Jude, 290 Federal Plaza, Central Islip, New York 11722; (iii) mailed to Macco & Stern, LLP, 135 Pinelawn Road, Suite 120 South, Melville, New York 11747; and (iv) mailed to the Office of the United States Trustee, so as to be received no later than **January 9, 2015.**

**PLEASE TAKE FURTHER NOTICE, that if an objection is timely filed to the relief requested in the Motion or proposed Order, or if the Court determines that a hearing is appropriate, the Court will schedule such hearing upon additional notice of such hearing provided by the applicant.**

Dated: Melville, New York
      December __, 2014

                              **MACCO & STERN, LLP**
                              Attorneys for the Plaintiff

           By:       _____
                 Michael J. Macco
                 135 Pinelawn Road, Suite 120 South
                 Melville, New York 11747
                 (631) 549-7900

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:

LAURIE A. WAGNER,

                           Debtor.

---------------------------------------------------------------x

WALTER G. WAGNER,

                           Plaintiff,

            – against –

LAURIE A. WAGNER,

                        Defendant.

---------------------------------------------------------------x

Case No. 14-74245 (AST)

Chapter 7

Adv. Pro. No. 14-08291 (AST)

## <u>DECLARATION IN SUPPORT OF MOTION<br>FOR AN ORDER DIRECTING ENTRY OF A DEFAULT JUDGMENT</u>

**MICHAEL J. MACCO, ESQ.,** affirms under the penalties of perjury:

1.      I am a member of Macco & Stern, LLP, attorneys for Walter G. Wagner, the above-referenced plaintiff (the "Plaintiff") in the adversary proceeding (the "Adversary Proceeding") against Laurie A. Wagner (the "Defendant"), and, as such, am familiar with the facts and circumstances herein.

2.      I submit this affirmation in support of the motion(the "Motion") for an order (the "Order") directing entry of a default judgment against the Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable through Rule 7055 of the Federal Rules of Bankruptcy Procedure, determining that the Defendant's debts to the Plaintiff are non-dischargeable under §§523(a)(5) and (15) of title 11 of the United States Code (the "Bankruptcy Code").  A copy of the proposed Order is annexed hereto as **Exhibit A.**

3.      For the reasons set forth below, entry of a default judgment (the "Default Judgment") in Plaintiff's favor under Bankruptcy Rule 7055 is appropriate.  A copy of the proposed Default Judgment is annexed hereto as **Exhibit B**.

## THE ADVERSARY PROCEEDING

4.      The Adversary Proceeding was commenced on October 23, 2014 pursuant to Bankruptcy Code §§523(a)(5) and (15), by the filing a complaint (the "Complaint") (ECF Docket No. 1) seeking a determination that certain monies Defendant owed to the Plaintiff and included on the Defendant's Petition and Schedules, were non-dischargeable, and entering a judgment against Defendant in such amount.  A copy of the Complaint is annexed hereto as **Exhibit C.**

5.      On October 24, 2014, the Clerk of the Court issued a summons (the "Summons") (ECF Doc. No. 2).  A copy of the Summons is annexed hereto as **Exhibit D**.

6.      On October 28, 2014, the Plaintiff served the Summons and Complaint upon Defendant (ECF Doc. No. 3).  A copy of affidavit of service is annexed hereto as **Exhibit E.**

7.      Pursuant to the Summons and Bankruptcy Rule 7004(e) Defendant was required to file a responsive pleading on or before November 24, 2014 (the "Answer Deadline").

8.      Between October 23, 2014 and the Answer Deadline, Defendant's divorce attorney, who is not representing her in the bankruptcy case or the Adversary Proceeding, contacted the Plaintiff, but at no point requested an extension of the Answer Deadline.

9.      Defendant failed to file a responsive pleading before the Answer Deadline.

10.     To date, no attorney has filed a notice of appearance on the Defendant's behalf.

11.     Insofar as the Defendant has failed to defend against the claims asserted in the Complaint, Plaintiff respectfully requests that the Court grant this Motion and enter the proposed Order and proposed Default Judgment.

## BASIS FOR RELIEF

12.     A court may enter a default judgment against a party when the when that party has failed to plead or otherwise defend its side of the case.

13.     Civil Rule 55, made applicable to the Adversary Proceeding by Bankruptcy Rule 7055, states, in relevant part:

> (a) *Entering a Default*.  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defendant, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) *Entering a Default Judgment*.
>
>> (1) *By the Clerk*.  If the plaintiff's claim is for sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>>
>> (2) *By the Court*. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to:
>>
>>> (A) conduct an accounting;
>>>
>>> (B) determine the amount of damages;
>>>
>>> (C) establish the truth of any allegations by evidence; or
>>>
>>> (D) investigate any other matter.

14.     Bankruptcy Rule 7012(e) states "[i]f a co complaint is duly served, the defendant shall serve an answer within 30 days after he issuance of the summons."

15.     The Complaint was duly served upon the Defendant, as evidenced by the Affidavit of Service annexed hereto.

16.     The Answer Deadline was thirty-days (30) days from the issuance of the Summons.

17.     Defendant has failed to appear, answer, or otherwise respond to the Complaint by the Answer Deadline.

18.     Defendant is neither a minor nor an incompetent.

19.     Upon information and belief, Defendant is not currently in active-military service.

20.     The Complaint has established:

(a) Defendant is the former spouse of the Plaintiff;

(b) Defendant was obligated to pay the Plaintiff Twenty-Thousand and 00/100 ($20,000.00) with interest at a statutory rate of nine-percent (9%) retroactive to January 15, 2012, within thirty (30) days of June 19, 2014, as a domestic support obligation;

(c) Defendant was obligated to pay the Plaintiff Five-Thousand and 00/100 ($5,000.00) within sixty (60) days of June 19, 2014, as attorneys' fees related to a domestic support obligation;

(d) Defendant has not paid the Plaintiff any portion of these amounts.

21.     Accordingly, Plaintiff is entitled to entry of a judgment on the First Claim for Relief and the Second Claim for Relief pursuant to Bankruptcy Code §§523(a)(5) and (15).

22.    No prior application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

23.    I respectfully request that the Court (i) enter an order under Bankruptcy Rule 7055 granting the Plaintiff's Motion; (ii) enter a judgment against Defendant determining that the amounts Defendant owes to the Plaintiff are non-dischargeable under Bankruptcy Code 523(a); (iii) enter a money judgment against Defendant in the amount of (a) $20,000.00 with interest at a statutory rate of nine-percent (9%) retroactive to January 15, 2012, and (b) $5,000.00 as attorneys' fees; and (iv) granting such other and further relief as this Court deems just and proper.

24.    I declare under the penalty of perjury that the foregoing is true and correct. Executed on December 11, 2014 in Melville, New York.

_____
MICHAEL J. MACCO

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:

LAURIE A. WAGNER,

                                       Debtor.

Case No. 14-74245 (AST)

Chapter 7

------------------------------------------------------------------x

WALTER G. WAGNER,

                                    Plaintiff,

Adv. Pro. No. 14-08291 (AST)

              – against –

LAURIE A. WAGNER,

                                    Defendant.

------------------------------------------------------------------x

## ORDER DIRECTING ENTRY OF A DEFAULT JUDGMENT

Upon a Notice of Presentment (the "Notice"), dated December 11, 2014, of Walter G. Wagner, the above-referenced plaintiff (the "Plaintiff"), seeking an order directing entry of a default judgment against Laurie A. Wagner, the above-referenced defendant (the "Defendant"); and upon the declaration of Michael J. Macco, Esq. (the "Declaration"), dated December 11, 2014, and the exhibits annexed thereto (collectively, the "Motion"); and upon the affidavit of service of the Motion on file with the Court; and no objections to the Motion having been interposed; and Plaintiff being entitled to judgment determining that the amounts Defendant owes to the Plaintiff are non-dischargeable under 11 U.S.C. §523(a); and Plaintiff being entitled to a money judgment against Defendant in the amount of (a) Twenty-Thousand and 00/100 ($20,000.00) Dollars with interest at a statutory rate of nine-percent (9%) retroactive to January 15, 2012, and (b) Five Thousand and 00/100 ($5,000.00) as attorneys' fees; and further notice being neither necessary nor required; and after due deliberation and consideration of all facts and

circumstances herein; and Plaintiff having demonstrated his *prima facie* entitlement to a default judgment; it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that Walter G. Wagner shall have judgment against Laurie A. Wagner in the amount (a) $20,000.00 with interest at a statutory rate of nine-percent (9%) retroactive to January 15, 2012, and (b) $5,000.00 as attorneys' fees.

SO ORDERED:

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re:

LAURIE A. WAGNER,

                       Debtor.

Case No. 14-74245 (AST)

Chapter 7

------------------------------------------------------------------x

WALTER G. WAGNER,

                       Plaintiff,

        – against –

LAURIE A. WAGNER,

                       Defendant.

Adv. Pro. No. 14-08291 (AST)

------------------------------------------------------------------x

## DEFAULT JUDGMENT

     This matter having come before the Court by Notice of Presentment (the "Notice"), dated December 11, 2014, and related motion (collectively, the "Motion") of Walter G. Wagner, the above-referenced plaintiff (the "Plaintiff"), seeking an order directing the entry of a default judgment against Laurie A. Wagner, the above-referenced defendant (the "Defendant"), and this court having entered an Order granting the Motion; it is hereby

     **ADJUDGED,** that all amounts the Defendant owes the Plaintiff are non-dischargeable under 11 U.S.C. §523(a); and it is further

     **ADJUDGED,** that Walter G. Wagner, with an address at 470 S. Delaware Avenue, Lindenhurst, New York 11757, has judgment against Laurie G. Wagner, having a last known address at 24 Ashland Street, Mt. Sinai, New York 11766, in the amount of (a) $20,000.00 with interest at a statutory rate of nine-percent (9%) retroactive to January 15, 2012, and (b) $5,000.00

as attorneys' fees, plus post judgment interest thereon from the date of entry of this Judgment at the Federal Rate; and it is further

**ADJUDGED**, that Plaintiff has immediate execution thereon; and it is further

**ADJUDGED,** that the Plaintiff has all of the rights and remedies afforded a judgment creditor by law; and it is further

**ADJUDGED,** that the Plaintiff may enforce this judgment against Defendant as allowed by applicable law.

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:

LAURIE A. WAGNER,

                        Debtor.

Case No. 14-74245 (AST)

Chapter 7

-------------------------------------------------------------------x

WALTER G. WAGNER,

                        Plaintiff,

Adv. Pro. No. 14-_____

        – against –

LAURIE A. WAGNER,

                        Defendant.

-------------------------------------------------------------------x

## COMPLAINT

    Walter G. Wagner, the above-referenced plaintiff (the "Plaintiff"), by his attorneys, Macco & Stern, LLP, complaining of defendant-debtor Laurie A. Wagner (the "Defendant"), respectfully represents and sets forth as follows:

### JURISDICTION

    1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (B), (I), and (O). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for relief are 11 U.S.C. §§523(a)(5) and (15), and Rules 4001 and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### PARTIES

    2.    Plaintiff is an individual residing in the State of New York.

    3.    Defendant is an individual residing in the State of New York.

## BACKGROUND

4.      On September 16, 2014 (the "Petition Date), the Defendant filed a voluntary petition (the "Petition") for relief under chapter 7 of title 11, United States Code (the "Bankruptcy Code").

5.      Thereafter, R. Kenneth Barnard, Esq., was appointed the interim trustee of the Defendant's bankruptcy estate, duly qualified, and is now the permanent trustee of the Debtor's bankruptcy estate.

6.      In November 1985, Plaintiff and Defendant (collectively, the "Parties") were married.

7.      On or about February 15, 2001, the Parties separated pursuant to written separation agreement (the "Separation Agreement").  A copy of the Separation Agreement is annexed hereto as **Exhibit 1**.

8.      On or about November 21, 2002, the Parties were formally divorced by a judgment of divorce (the "Divorce Judgment") entered by the Supreme Court for the State of New York, County of Suffolk (the "State Court") in the Parties' divorce action, assigned index number 16870/2002 (the "Divorce Action").  A copy of the Divorce Judgment is annexed hereto as **Exhibit 2**.

9.      The Divorce Judgment incorporated, but did not merge with, the Separation Agreement.

10.     On or about May 18, 20003, the Parties amended the Separation Agreement (the "Amended Separation Agreement") to include, *inter alia*, language regarding the Defendant's obligation to remit $20,000.00 on or before the Parties' youngest child's twenty-first birthday, or

if the child was attending college, end of the academic year after the child's twenty-first birthday. A copy of the Amended Separation Agreement in annexed hereto as **Exhibit 3**.

11.     On or about January 15, 2012, the Parties' youngest child turned twenty-one, and all conditions precedent to the Separation Payment contained in the Amended Separation Agreement were met.

12.     Therefore, the Defendant was obligated to make the Separation Payment to the Plaintiff pursuant to the Amended Separation Agreement. Defendant made no such payment.

13.     Plaintiff re-opened the Divorce Action to compel Defendant's remittance of the Separation Payment.

14.     On June 19, 2014, the State Court entered a Decision and Order (the "Separation Payment Order") ordering the Defendant to make pay the Plaintiff $20,000.00, together with statutory interest at nine-percent (9%) retroactive to January 15, 2012, within thirty days (the "Ordered Payment"). The State Court also ordered the Defendant to pay the Plaintiff $5,000.00 (the "Attorney's Fees," and together with the Ordered Payment, the "Owed Amount") within sixty (60) days for the Plaintiff's attorneys' fees. A copy of the Separation Payment Order is annexed hereto as **Exhibit 4**.

15.     As of the Petition Date, Defendant had remitted no portion of the Owed Amount to the Plaintiff

16.     On Schedule F to the Petition, Defendant lists the Plaintiff as a creditor holding a claim in the amount of $23,450.00 as "payment for real estate."

17.     Upon information and belief, the amount on Schedule F reflects the Defendant's obligation to remit the Ordered Payment, including interest, but fails to include the Attorney's Fees.

18.     On or about October 1, 2014, Plaintiff sent a letter (the "Letter") to Defendant requesting Plaintiff and Defendant stipulate to the non-dischargeability of the Owed Amount under Bankruptcy Code §523. A copy of the Letter is annexed hereto as **Exhibit 5**.

19.     Defendant's attorney's response to the Letter indicates that the Defendant does not agree to the entire Owed Amount, including interest and attorney's fees, and does not agree that the Owed Amount is totally non-dischargeable.

20.     The Owed Amount is a non-dischargeable debt under Bankruptcy Code §§523(a)(5) and/or (15).

### AS AND FOR THE FIRST CLAIM FOR RELIEF
#### (11 U.S.C. §523(a)(5))

21.     Plaintiff repeats, realleges, and reasserts each and every allegation contained in paragraphs "1" through "22" of this Complaint as it is set forth at length herein.

22.     The debt underlying the Owed Amount accrued prior to date an order for relief was entered in the Defendant's above-referenced bankruptcy case.

23.     The Plaintiff is a former spouse of the Defendant.

24.     The Owed Amount is owed to and recoverable by the Plaintiff

25.     The Owed Amount is in the nature of alimony, maintenance or support.

26.     The Owed Amount was established prior to the date an order for relief was entered in the Defendant's above-referenced bankruptcy case.

27.     The Owed Amount was established by a separation agreement, divorce decree, or property settlement.

28.     The Owed Amount was not assigned to a nongovernmental entity.

29.     The Owed Amount is a domestic support obligation

30.     Consequently, Plaintiff is entitled to an order determining that Owed Amount, comprised of the Ordered Payment, in the amount of $20,000.00, together with statutory interest at nine-percent (9%) retroactive to January 15, 2012, plus the Attorney's Fees, in the amount of $5,000.00, plus attorneys' fees and costs, is non-dischargeable pursuant to Bankruptcy Code §523(a)(5), and a judgment be entered against Defendant in such amount.

## AS AND FOR THE SECOND CLAIM FOR RELIEF
### (11 U.S.C. §523(a)(15))

31.     Plaintiff repeats, realleges, and reasserts each and every allegation contained in paragraphs "1" through "31" of this Complaint as it is set forth at length herein.

32.     The Plaintiff is a former spouse of the Defendant.

33.     Consequently, Plaintiff is entitled to an order determining that Owed Amount, comprised of the Ordered Payment, in the amount of $20,000.00, together with statutory interest at nine-percent (9%) retroactive to January 15, 2012, plus the Attorney's Fees, in the amount of $5,000.00, plus attorneys' fees and costs, is non-dischargeable pursuant to Bankruptcy Code §523(a)(15) and a judgment be entered against Defendant in such amount.

**WHEREFORE,** Plaintiff prays that the Court enter an order:

(a) as to the first claim for relief, determining that debt of not less than $25,000.00, together with statutory interest laid forth in the Separation Payment Order, plus attorneys' fees and costs, is non-dischargeable pursuant to Bankruptcy Code §523(a)(5), and a judgment be entered against Defendant in such amount;

(b) as to the second claim for relief, determining that debt of not less than $25,000.00, together with statutory interest laid forth in the Separation Payment Order, plus attorneys' fees and costs, is non-dischargeable pursuant to Bankruptcy Code §523(a)(15), and a judgment be entered against Defendant in such amount; and

(c) granting such other and different relief as the Court deems just and proper.

Dated: Melville, New York
October __, 2014

**MACCO & STERN, LLP**
Attorneys for Walter G. Wagner

By: _____
Michael J. Macco
135 Pinelawn Road, Suite 120 South
Melville, New York 11747
(631) 549-7900

Exhibit 1

# SEPARATION AGREEMENT

## LAURIE A. WAGNER

### WITH

## WALTER G. WAGNER

BARBARA JANE KELLY, ESQ.
85 Echo Avenue
Miller Place, New York 11764
(516) 473-4660

1

## SEPARATION AGREEMENT

## LAURIE A. WAGNER

### with

## WALTER G. WAGNER

THIS AGREEMENT, effective this    day of          , 2001, in the State of New

York, by and between: LAURIE A. WAGNER presently residing at 24 Ashland St., Mount

Sinai, NY 11766, hereinafter called the "WIFE"; and WALTER G. WAGNER, presently

residing at 24 Ashland St., Mount Sinai, NY 11766,  hereinafter called the "HUSBAND".

### WITNESSETH:

WHEREAS, the parties hereto were duly married in the County of Nassau, State of

New York, on November 23, 1985; and

WHEREAS, there were three children born of the marriage, to wit: DAVID

ROGER WAGNER born on June 2, 1986; KAITLYN MARIE WAGNER born on

December 6, 1988 and JONATHAN STEVEN WAGNER born on January 15, 1991,

hereinafter known as "THE CHILDREN" and

WHEREAS, unhappy and irreconcilable differences have arisen between the parties

and, as a result, they have separated and are now living separate and apart from each

other, and

WHEREAS, it is the intention of the parties to continue to live separate and apart

and it is their desire to enter into an agreement under which all their respective rights,

2

remedies, privileges and obligations to each other, arising out of the marriage relation or otherwise, shall be fully prescribed and bounded thereby; and

WHEREAS, the parties hereto have had opportunity to be fully and independently advised of their respective legal rights, remedies and obligations arising out of the marriage relation by counsel of their own choice, and each having, in addition, made independent inquiry with respect to the same; and

WHEREAS, the parties hereto each warrant and represent to the other that they fully understand all the terms of this agreement and each believes the same to be fair, just, reasonable and to their respective individual best interest; and

WHEREAS, the parties have been fully informed of the fact that there has been enacted in the State of New York and is now in full force and effect, a statute commonly known as the "Equitable Distribution Bill."

NOW, THEREFORE, in consideration of the premises and of the covenants and promises contained herein, the parties mutually agree as follows:

### NON-INTERFERENCE

Neither party shall in any way molest, disturb, compel or seek to compel, the other to associate, cohabit or dwell with him or her, by any action or proceedings for restoration of conjugal rights or by any means whatsoever. Each party may contract, carry on and engage in any employment, business or trade which either may deem fit, free from control, restraint or interference, direct or indirect, by the other, in all respects as if such parties were sole and unmarried. Each party may make and keep such friends and acquaintances as he or she may desire, without interference from the other.

3

## SOCIAL SECURITY NUMBERS

The HUSBAND hereby represents that his Social Security number is 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.

The WIFE hereby represents that her Social Security number is 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.

## SEPARATE RESIDENCE

It is, and shall be, lawful for the parties hereto, at all times hereafter, to live separate and apart from each other.

## MUTUAL RELEASE AND DISCHARGE OF GENERAL CLAIMS

Subject to the provisions of this agreement, each party has remised, released and forever discharged, and by these presents does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns, remise, release and forever discharge the other of and from all cause or causes of actions, claims, rights or demands whatsoever, in law or in equity, which either of the parties hereto ever had or now has against the other, except any or all cause or causes of action for divorce or separation and any defenses either may have to any divorce or separation brought by the other, and except any cause or causes of actions based upon rights and obligations established by the terms of this agreement.

## RESPONSIBILITY FOR DEBTS

(a) Except as otherwise expressly set forth herein, the WIFE represents and agrees that she has not heretofore, nor will she hereafter, incur or contract any debt, charge, obligation or liability whatsoever for which the HUSBAND is or may become liable. The WIFE agrees to indemnify and hold the HUSBAND harmless of all loss, expenses (including

4

reasonable attorneys' fees) and damages in connection with or arising out of a breach by the Wife of her foregoing representation and agreement.

(b) Except as otherwise expressly set forth herein, the HUSBAND represents and agrees that he has not heretofore, nor will he hereafter incur or contract any debt, charge, obligation or liability whatsoever for which the WIFE is or may become liable. The HUSBAND agrees to indemnify and hold the WIFE harmless of all loss, expenses (including reasonable attorneys' fees) and damages in connection with or arising out of a breach by the HUSBAND of his foregoing representation and agreement.

## CHILD SUPPORT

a) The parties have been advised of the Child Support Standards Act (the "Act") and all of its provisions, which set forth guidelines for child support obligations, and acknowledge that said Act has been fully explained to their satisfaction by their respective attorneys. With said knowledge and understanding of the Act and in reliance of all the payments required to be made by the Husband to the Wife under this agreement, the parties have voluntarily entered into this agreement, which contains the provisions for child support set forth herein. More particularly, the parties acknowledge that the Act presumptively sets the needs of the child of the parties at 29% of their combined parental income up to $80,000 per year and an additional discretionary sum for combined parental income over $80,000 per year. WIFE acknowledges that her gross salary minus the statutory deductions is $10,000.00 . HUSBAND acknowledges that his gross salary minus statutory deductions is $46,259.25 Their joint income is $56,259.25 . The parties

5

acknowledge that 29% of their combined parental income is $16,315.18. The HUSBAND

acknowledges that his yearly proportion of child support is THIRTEEN THOUSAND

THREE HUNDRED SEVENTY EIGHT AND 45/100 ($13,378.45) DOLLARS a year or

82% of the combined parental obligation. The HUSBAND shall pay to the WIFE for the

support and maintenance of their children the sum of TWO HUNDRED FIFTY SEVEN

AND 28/100 ($257.28) DOLLARS per week for three unemancipated children, DAVID

ROGER WAGNER born on June 2, 1986, KAITLYN MARIE WAGNER born on

December 6, 1988 and JONATHAN STEVEN WAGNER born on January 15, 1991, in

advance, commencing on the Friday day after the month after the date hereof and

continuing on each Friday thereafter until the emancipation of the youngest child (as

"emancipated" is described later in this Agreement.) At the time that the oldest child,

DAVID ROGER WAGNER born on June 2, 1986 is emancipated, the child support for

KAITLYN MARIE WAGNER born on December 6, 1988 and JONATHAN STEVEN

WAGNER born on January 15, 1991 shall be adjusted to reflect twenty-five (25%) percent

of the HUSBAND's child support obligation. When KAITLYN MARIE WAGNER born

on December 6, 1988 is emancipated, the HUSBAND's child support obligation for

JONATHAN STEVEN WAGNER born on January 15, 1991 shall be adjusted to reflect

seventeen (17%) percent of the HUSBAND's child support obligation until JONATHAN

STEVEN WAGNER'S emancipation (as "emancipated" is described later in this

Agreement.) Under this agreement the HUSBAND's obligation for child support also

includes his obligations to pay or contribute to medical insurance and medical expenses.

HUSBAND will keep CHILDREN on his medical plan through his employment at The

6

Town of Oyster Bay, New York. HUSBAND agrees to pay the co-payments on the medical and dental insurance and WIFE will provide receipts to HUSBAND from such co-payments if she has paid them to the providers.

The parties further agree that if the HUSBAND is current on his child support, then every three years, on the anniversary of the date of execution of this agreement, the amount of child support shall be adjusted pursuant to the Child Support Standards Act (Section 240 of the Domestic Relations Law). The WIFE retains her right to collect her child support payments as provided herein through the Suffolk County Support Collection Unit by means of an income execution against the Husband's earnings. Until such time as the WIFE applies to the Child Support Collection Unit and the income execution takes effect, the HUSBAND shall be responsible for timely making the child support payments directly to the WIFE.

## MAINTENANCE

A. The HUSBAND hereby acknowledges that he is in good health, is presently employed and earns an income sufficient for his own needs. The HUSBAND hereby waives any and all claim against the WIFE for maintenance and/or support at the present time, as well as in the future.

B. HUSBAND further acknowledges and agrees to pay to the WIFE the sum of THREE HUNDRED THIRTY EIGHT AND NO CENTS ($338.00) DOLLARS per month as maintenance for five (5) years from the date of the signing of this Separation Agreement. Such sum shall be made payable to the WIFE upon the first day of each month.

## EQUITABLE DISTRIBUTION OF PROPERTY

a) The parties, by execution of this agreement, have provided for the equitable distribution of all property belonging to them whether such property qualifies as "separate property" or as "marital property" within the meaning of Section 236B of the Domestic Relations Law.  Any reference to allocation of property, whether real or personal, and whether properly defined as "separate property" or as "marital property" is made for the purpose of settling claims to such property by either of the parties and/or for the purpose of effectuating an equitable distribution between the parties.

b) The parties further agree that the distribution of property, as set forth in this agreement, constitutes distribution which shall be binding on both parties, now or in the future, and each party waives any claim of right or title to any property, either real or personal, which has been allocated to the other party pursuant to the terms of this agreement or which may hereafter be acquired by the other party.

c) In order to evaluate their separate and marital property to enable the parties to arrive at the equitable distribution set forth in this agreement, the parties have made full disclosure to one another of all assets and liabilities.  The parties acknowledge that they have been advised that each has the right to demand a Statement of Net Worth from the other.

d) The parties acknowledge that they are aware of Section 236 (b) of the Domestic Relations Law of the State of New York, commonly known as the Equitable Distribution Law.  Except to the extent provided in this agreement, the parties knowingly waive their rights and release each other from any claims for maintenance, distribution of marital

8

property, distributive awards, special relief or claims regarding separate property or increase in the value thereof and, in lieu thereof, the parties accept the provisions of this agreement as being fair and equitable.

e) The parties intend that their real and personal property division, as provided in this agreement, shall be final and irrevocable. Unless the parties execute a formal amendment to this agreement, in writing, it is their intention that the WIFE'S separate property shall forever remain hers, and the HUSBAND'S separate property shall forever remain his, notwithstanding (a) the reconciliation of the parties; (b) the rescission or termination of this agreement; or (c) a remarriage between the parties, in the event they are divorced.

f) Each party is convinced that he/she knows the nature, extent and value of the other party's property. The parties acknowledge that they are aware of their right to compel discovery and inspection of the other party's books and records, business and personal, of their right to have accountants, appraisers or others investigate, appraise or evaluate the other party's business and property. Each party has elected not to take any further steps, themselves, or through others, in connection with discovery, inspection, investigation, appraisal or evaluation of the other party's business or property. EACH PARTY EXPRESSLY AGREES THAT HIS/HER DECISION NOT TO SEEK APPRAISALS AND/OR TO UTILIZE OTHER FINANCIAL DISCOVERY PROCEDURES SHALL NOT AT ANY TIME BE A BASIS OF SEEKING THE RESCISSION OR INVALIDITY OF THIS AGREEMENT.

9



## ALLOCATION OF PROPERTY

a) The parties have identified and evaluated their "marital property" as well as their "separate property" and have arrived at an allocation of their "property" which they deem to be an equitable distribution.

b) Following is a list of "property" as identified by the parties:

1. Furniture, furnishings and contents of marital residence.

2. Bank accounts

3. Life Insurance Policies

4. Automobiles

5. Jewelry

6. Stocks and Bonds

7. Pension and/or Profit Sharing Plans

8. Future settlement of lawsuits pending

c) The HUSBAND and WIFE have divided the furnishings in the marital home as follows: HUSBAND shall keep as his separate property: dresser, end table, desk, bed, one microwave oven, living room television set, assorted towels and all other personal items. All other items not listed above will remain in the marital home during WIFE's exclusive occupancy and shall be the WIFE's separate property.

d) Except as otherwise expressly set forth herein, each party shall own, as his or her "separate property" free of any claim of right of the other, all of the items of property, real, personal and mixed, of any kind, nature of description and wheresoever situated, and/or which are allocated to each party pursuant to this Agreement, and/or which are now and

10

which may hereafter be in his or her name, control or possession, with full power to dispose of the same fully and effectually in all respects and for all purposes.

e) HUSBAND and WIFE have agreed that each will heretofore only have separate checking and savings accounts and will have no joint bank accounts.

f) Each party shall retain all items of personal jewelry as his/her "separate property" and each party hereby forever waives any claim of right, title or interest to the jewelry presently in the possession of the other party.

g) As part of the equitable distribution between the parties, the parties have reached the following agreement regarding their automobiles:

1. The WIFE represents that she will retain as her "separate property" the 1991 Ford Taurus automobile which will be registered under her name. The HUSBAND hereby waives any and all claim of right, title or interest to said automobile from the date of the signing of this Agreement.

2. HUSBAND shall retain as his "separate property" the 1989 Dodge Caravan automobile which is registered in his name. The WIFE hereby waives any and all claim of right, title or interest to said automobile from the date of signing of this Agreement.

h) HUSBAND and WIFE represent and acknowledge that at present the HUSBAND AND WIFE have automobile insurance for both vehicles under both names. HUSBAND and WIFE further represent and acknowledge that upon the signing of this Agreement, each of them will obtain his or her own automobile insurance and will be individually responsible for payment of his or her own insurance policy.

i) HUSBAND represents that he presently has a Deferred Compensation Plan through his Employer, The Town of Oyster Bay, Employee Social Security Number 107-

11

42-3175, VRU Account Number: 01106042 and further acknowledges that a portion of that plan may be marital property capable of evaluation by an expert. HUSBAND shall pay to WIFE the sum of FIVE HUNDRED ($500.00) DOLLARS and hereby represents and agrees that he shall be solely responsible for any remaining loan amount on his New York State Retirement System Account, #3398691-0. In return for the consideration above described, WIFE acknowledges and represents that she shall waive now and in the future any interest in HUSBAND's Deferred Compensation Plan as described in this paragraph.

j) The HUSBAND and WIFE acknowledge that the HUSBAND has a retirement pension account through the Town of Oyster Bay, beginning on March 28, 1985, Registration #3398691-0, Plan A15. HUSBAND acknowledges that this retirement pension account may be a marital asset to which WIFE is entitled to equitable distribution, and that said asset is capable of being evaluated by an expert. The HUSBAND acknowledges that he has signed authorization forms for an expert to prepare a Domestic Relations Order which will become effective at the time of the Judgment of Divorce and which will be submitted to a Judge of the County of Suffolk at the same time that the proposed Judgment of Divorce is presented to the Supreme Court of Suffolk County. It is understood and agreed between the HUSBAND and the WIFE that the valuation date used by the expert to determine the marital portion for the WIFE shall be the date of the execution of this Separation Agreement, but will include any interest or earnings on that

12



marital portion that accrue between the execution of the Separation Agreement and the granting of the Judgment of Divorce which shall include the aforementioned Domestic Relations Order.

k) HUSBAND represents that he has life insurance through Met Life worth approximately $250,000.00, Account #997203244 . HUSBAND warrants and represents that he will keep such life insurance in full force and effect with WIFE as beneficiary until the Judgment of Divorce. At that time, HUSBAND will change the beneficiary on each policy to reflect equal shares among the three CHILDREN, to wit: DAVID ROGER WAGNER born on June 2, 1986; KAITLYN MARIE WAGNER born on December 6, 1988 and JONATHAN STEVEN WAGNER born on January 15, 1991 with WIFE as Trustee until the youngest CHILD reaches twenty-one(21) years of age. Proof of such insurance coverage should be sent to WIFE if she requests such information until the time that the youngest CHILD becomes twenty-one (21) years of age.

l) If it shall be hereinafter determined that either party is now possessed of any property that would be subject to distribution that is not set forth in this Agreement, or that one of them has made, without the consent of the other, any gift or transfer of such property without adequate consideration, the parties hereby covenant and agree that the non-receiving/injured party shall receive from the other party, on demand, an amount equal to one-half (1/2) the fair market value of such property at the highest value between the date of this Agreement and the date of settlement of the issue of after discovered property.

13

## MARITAL RESIDENCE

a) The parties presently own as tenants by the entirety the premises commonly known as 24 Ashland St., Mount Sinai, New York 11766, District 0200, Section 233.00, Block 06.00, Lot 025.000, hereafter ("the premises").

b) HUSBAND and WIFE represent and acknowledge that the WIFE shall have exclusive use and possession of the marital residence until the youngest child, JONATHAN STEVEN WAGNER, born on January 15, 1991 attains the age of eighteen (18) years. For so long as the WIFE's exclusive use and possession of the marital residence shall continue hereunder, the HUSBAND shall not bring nor permit to be brought on the HUSBAND's behalf, any action or proceeding for partition or otherwise seeking to compel a sale of said residence.

c) During the period of the WIFE's exclusive use and possession of the marital residence, and so long as the HUSBAND is not in arrears on either Child Support payments or Maintenance payments as stated in this Agreement, it shall be the sole obligation of the WIFE to pay all sums required with respect to and under the terms of the mortgage pertaining to such residence which is held by Wells Fargo Home Mortgage, Inc., Loan Number 5288001 with a principal balance as of 12/11/00 of $126,323.42. The WIFE shall also pay all utilities and carrying charges associated with the costs of maintaining the premises. If there are any repairs necessary to the house during WIFE's exclusive use and possession of the premises, and the repairs are for an amount over $100.00, the HUSBAND and WIFE will share equally the expense of the repair. If the HUSBAND does not pay his share of the repair, and WIFE pays the full amount, then the WIFE will keep receipts of

14

payment and at the time of the sale of the premises, the amount owed to the WIFE for said repairs shall be deducted from HUSBAND's share of the proceeds.

d) During the period of the WIFE's exclusive use and possession of the marital residence neither party shall cause or permit, either by affirmative act or by omission, the accrual of any new or additional liens or encumbrances against such property.  In the event that either party should incur or permit the accrual of any such lien or encumbrances, then, in addition to any other remedy available to the other party at law or equity, the amount required to satisfy and discharge such lien or encumbrance shall be fully paid exclusively from the share of the proceeds of sale of the party who incurred or permitted the accrual of such lien or encumbrance.

e) In the event that the WIFE shall remarry or cohabit with another unrelated person, the exclusive use and occupancy of the marital residence shall immediately terminate.

f) Upon the termination of the WIFE's exclusive use and possession of the marital residence or any time before the termination of the WIFE's exclusive use and possession of the marital residence the WIFE shall have the option of buying out the HUSBAND's interest in the marital residence or having the marital residence placed for sale to a third party.   The parties shall together cooperate in the buyout or sale of said property at the best available price and upon the best available terms.  In the event the parties cannot agree upon an acceptable gross sale price, each party shall select a reputable real estate appraiser of his or her own choosing and shall secure an appraisal of the fair market value of the property, with each party being bound to accept a gross sale price equal to the mean

15



average of the said two appraisals.

g) Upon either the buyout of the HUSBAND's interest by the WIFE or the sale of the marital premises to a third party, the parties shall divide the net sales proceeds in accordance with the following percentages: WIFE 50%; HUSBAND 50%. For purposes of this provision, the term "net sales proceeds" shall mean the gross sale price, less any remaining principal mortgage balance existing at the time of sale, less any and all costs and expenses of sale and closing.

## MEDICAL AND DENTAL

a) Both the HUSBAND and the WIFE represent and acknowledge that only the HUSBAND has medical and dental coverage for both WIFE and CHILDREN through his employer, The Town of Oyster Bay, New York. HUSBAND represents that the plan administrator is the Empire Plan with the following ID numbers: LAURIE A. WAGNER, 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; DAVID ROGER WAGNER, 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-03-014; KAITLYN MARIE WAGNER, 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-04-012; and JONATHAN STEVEN WAGNER, 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-05-019. HUSBAND further represents that the dental plan is with GUARDIAN, under his Social Security Number 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.

b) HUSBAND further represents that the medical and dental coverage of WIFE through the above plans will continue until the Judgment of Divorce. HUSBAND represents that CHILDREN, to wit: DAVID ROGER WAGNER born on June 2, 1986; KAITLYN MARIE WAGNER born on December 6, 1988 and JONATHAN STEVEN

16



WAGNER born on January 15, 1991 will be covered under HUSBAND's medical and dental insurance until their emancipation.

c) Both the HUSBAND and WIFE represent and acknowledge that if a CHILD is treated by an out of plan provider, HUSBAND and WIFE will share the cost of treatment of the CHILD by that provider according to the following ratio: fifty (50%) percent by the HUSBAND and fifty (50%) percent by the WIFE. The HUSBAND and WIFE further acknowledge that they will share the cost of any medical or dental procedure, including orthodontics, not covered by the medical or dental plans, according to the following ratio: fifty (50%) percent by the HUSBAND and fifty (50%) by the WIFE.

## CUSTODY AND VISITATION

a)The parties shall have joint legal custody of the children of the marriage, DAVID ROGER WAGNER born on June 2, 1986, KAITLYN MARIE WAGNER born on December 6, 1988 and JONATHAN STEVEN WAGNER born on January 15, 1991, and the WIFE shall have primary residential custody of said children. The party having primary residential custody of the children shall have the right to make all day to day ordinary determinations concerning the children without the need of consulting the other parent.

b) The parties hereto mutually agree that if either of them has any knowledge of any illness or accident or other circumstance that seriously affects the children's health or welfare, the parent who has such knowledge shall promptly notify the other parent of the circumstance, and liberal visitation shall be allowed.

17

c) Each parent shall be entitled to complete, detailed information from any pediatrician, general physician, dentist, consultant or specialist attending the children for any reason whatsoever and to be furnished with copies of any reports given by them, or any of them, to the other parent.

d) Each parent shall be entitled to complete, detailed information from any teacher or school giving instruction to the child or at which the child may attend, and to be furnished with copies of all reports given by them, or any of them, to the other parent.

e) The parent having primary residential custody shall provide the other parent with a copy of the children's school calendar within ten (10) days of her receipt of same.

f) Each party shall use his or her best efforts to exercise his or her rights under this article in such a manner as not to disrupt the children's normal and regular routine and with due consideration and regard for the schedule of the other party.

g) Neither HUSBAND nor WIFE shall put or suffer any person to put any obstacle in the way of the maintenance of love and affection between the children, their mother and their father. Neither HUSBAND nor WIFE shall do anything or suffer any other person to do anything to estrange the children from the other parent or to hamper the children's natural development of love and affection for both parents.

h) The parties agree that at no time prior to their emancipation shall the children be known by any other surname than WAGNER. Further, both parties covenant and agree that they will not initiate or permit the designations of "Mother" and/or "Father" or their equivalent to be used by the children with reference to any person other than their natural

18

mother and father.

     i) Husband shall pick the children up at WIFE's residence and return them thereto when exercising his visitation rights according to the following schedule:

     HUSBAND shall have visitation with the children every other weekend from Friday at 6 p.m. until Sunday at 9 p.m.  HUSBAND shall not work during the times of his visitation with the children unless appropriate babysitting services are provided.

     HUSBAND shall have visitation with the children each Tuesday evening, such visitation to be from 6 p.m. to 8 p.m., HUSBAND's schedule permitting.

     HUSBAND's visitation with DAVID ROGER WAGNER born on June 2, 1986 will be conditioned upon child's willingness to participate in such visitation.

     HUSBAND and WIFE represent and agree that the visitation may be changed as they may mutually agree in the future.

     Neither HUSBAND nor WIFE will take the children out of the State of New York without the other party's knowledge and consent, such consent to not be unreasonably withheld.

     HUSBAND and WIFE shall have the children for alternate major holidays, including Christmas Day, New Year's Day, Easter Sunday, July 4th, Labor Day, Thanksgiving with the HUSBAND having the even years and WIFE having the odd years. WIFE will have the children on Mother's Day and HUSBAND will have the children on Father's Day.  Both HUSBAND and WIFE will see the children on the children's birthday at mutually agreed upon times.

19



HUSBAND will have children for two weeks of vacation during July and August, not necessarily consecutive. HUSBAND will notify WIFE by June 1st of each year as to his choice of vacation weeks.

### RELOCATION

The WIFE shall not remove the permanent residence of the children beyond a radius of fifty (50) road miles from the children's present residence without the prior, written consent of the HUSBAND. This paragraph shall not apply and shall be deemed deleted from this agreement if the HUSBAND removes his permanent residence beyond said radius.

### COLLEGE EXPENSES

a) If the HUSBAND is current in his child support payments to the WIFE, then the HUSBAND and WIFE agree to pay for the college expenses of their unemancipated children according to the following ratio: HUSBAND and WIFE will pay their pro rata shares of college expenses provided the child is in full-time day attendance on a continuous basis with reasonably regular attendance and is matriculated in a course of study leading to an undergraduate degree at an accredited college or university; further provided that the HUSBAND and WIFE shall each approve of said college or university, which approvals shall not be unreasonably withheld. College expenses shall mean room, board, tuition, registration fees and required book and laboratory materials and economy transportation within the continental United States between the child's residence and the college for two

20



round-trips per academic year. It is understood by HUSBAND and WIFE that the minimum college expense paid by the HUSBAND shall be those expenses incurred by a student at a State University of New York college on a full time basis including the expenses stated above in this paragraph.

## EMANCIPATION

"Emancipation" of a child as used in this agreement shall terminate all support obligations of the HUSBAND to the child and shall be deemed to have occurred upon the earliest happening of any of the following events:

a) The child attaining the age of twenty-one years, unless the child is attending college full time, and if so, then at the end of the academic year following the child's twenty-first birthday.

b) Marriage of the child, even though said marriage may be void or voidable, and despite any subsequent annulment or termination thereof.

c) Entry of the child into the active military service of the United States, said emancipation to continue only as long as the child is active in said military service; if the child shall terminate active service prior to the occurrence of another emancipation event, the child shall again be deemed to be unemancipated until the occurrence of another emancipation event.

d) Engaging in full-time employment whereby the child is fully self-supporting, but

21

not including employment part-time during college or employment during school recesses.

e) Permanent residence away from the WIFE.  Residence at a college or boarding school and travel during holiday, summer and other school or college recesses shall not be deemed such a permanent residence.

f) The child attains the age of eighteen (18) years and does not continue to pursue a formal education at an accredited secondary school, college or university on a full time basis;

g) Death of a child

## INCOME TAXES

a) The parties represent and acknowledge that they will file joint income taxes for 2000 and will mutually decide next year whether it will be beneficial to each of them to file jointly or individually.

b) The parties will share equally all tax refunds,  levies, assessments or penalties arising out of any income tax returns heretofore or hereafter filed jointly by the parties, except to the extent that either party may have failed to disclose income which should have been reported on any tax returns or may have improperly claimed deductions which should not have been claimed.  In such event, the party who has failed to disclose income or has improperly claimed deductions shall be solely responsible for any tax levies, assessments or penalties arising therefrom, and that party shall indemnify and hold harmless the other party from any liability whatsoever for such levies, assessments or penalties.

c) Each party hereby agrees to furnish to the other party copies of all joint income

22

tax returns, together with any and all supporting information connected and/or attached to said returns.

d) Each party agrees to cooperate fully with the other in the event of any audit or examination of any joint tax returns by a taxing authority and agrees to furnish to the other party being examined, or his or her designees, promptly and without charge, such papers, records, documents, authorizations and information as may be reasonably appropriate in connection with said audit or examination.

e) The parties hereby agree that they shall share equally all legal fees and/or accountant's fees in the event that the services of legal counsel and/or an accountant are needed in connection with any audit or examination of any joint tax returns filed by the parties, except to the extent that either party may have failed to disclose income which should have been reported on any tax returns or may have improperly claimed deductions which should not have been claimed. In such event, the party who has failed to disclose income or has improperly claimed deductions shall be solely responsible for any legal fees and/or accountant's fees in connection with any audit or examination of any joint tax returns filed by the parties, and that party shall indemnify and hold harmless the other party from any liability whatsoever for such fees.

f) Each party further agrees that he/she shall be solely and exclusively responsible for any costs, penalties, assessments, incurred as the result of his/her failure to provide information required pursuant to this Agreement, or to cooperate in signing any documents required pursuant to this Agreement, or to cooperate in connection with any

23



audit or examination. Each party hereby covenants and agrees that he/she shall indemnify the other party and hold him/her harmless from any and all liability for any costs, penalties, assessments, incurred as the result of his/her failure to cooperate as required under the terms of this Agreement.

g) The Agreement the parties have made hereunder to be responsible for levies, assessments or penalties arising out of any joint income tax returns shall survive the death of that party and the responsibility for payment of such levies, assessments, or penalties shall be a binding obligation on that party's estate.

h) It shall be the WIFE's right to claim the three children as a tax exemptions on her income tax return, however the WIFE agrees to yearly analyze and review the respective tax returns and possible tax benefits with respect to the minor children exemptions. If WIFE does agree to having the HUSBAND take one or more exemptions, then HUSBAND will reimburse WIFE one-half of the tax benefit that he receives because of claiming the exemption or exemptions. In the event that the WIFE agrees that HUSBAND shall claim one or more of the children as exemptions on his return, then WIFE shall promptly execute and deliver to the HUSBAND, IRS Form 8332 or its equivalent and WIFE shall take all other actions that may be necessary and appropriate to enable HUSBAND to claim one or more exemptions for the children. If the tax benefit to the HUSBAND increases through changes in the law or other circumstances, the WIFE will receive an equal share of that benefit. Should the WIFE allow the HUSBAND to claim one or more children in any tax year, such action shall not be considered a waiver of her right to claim the children as

24



exemptions in subsequent years.

i) All payments provided for in this Agreement shall not be deemed alimony (maintenance) for income tax purposes and are not intended to be such unless such payments are specifically defined as alimony (maintenance) in the clause of the Agreement which provides for the payment in question.

j) No representation has been made to either party by his/her own attorney or by the attorney for the other party, as to the tax consequences and/or liabilities arising out of the provisions of this Agreement as to child support or as to the distribution of any and all assets pursuant to this Agreement. Both parties acknowledge that they have been advised by their respective counsel that they each require the services of an independent accountant to properly inform them of any tax consequences and/or liabilities that may arise as a result of any provisions of this Agreement.

## LEGAL REPRESENTATION

The parties represent to each other that the WIFE has been represented by BARBARA JANE KELLY, Attorney at Law, 85 Echo Avenue, Miller Place, New York 11764 and the HUSBAND is aware of his right to have his own independent counsel but has chosen to represent himself. Each party represents and warrants that he or she has dealt with no other attorney for which services the other party is or may become liable and will indemnify and hold the other party harmless of all loss, expenses (including reasonable attorneys' fees) and damages in the event of a breach of said representation and warranty. However, if either party should default in any of his or her obligations hereunder, or should

25



unsuccessfully challenge the validity of this agreement or its interpretation, then said party shall be liable for all damages (including those caused by delayed payments), costs and expenses of the other party as a result thereof, including but not limited to reasonable attorneys' fees.

### FULL DISCLOSURE

Each party has made independent inquiry into the complete financial circumstances of the other and represents to the other that he or she is fully informed of the income, assets, property and financial prospects of the other, is aware of all separate property and all marital property as those terms are defined in Domestic Relations Law section 236 and is satisfied that full disclosure has been made, and that neither party can appropriately make a claim against the other by reason of failure to disclose or failure of knowledge of the financial circumstances of the other. The parties have been advised by their respective attorneys of their right to compel further discovery and inspection of the other's financial and personal books and records and their right to have accountants, appraisers or others investigate, appraise or evaluate each other's finances and property and to conduct further depositions, among other procedures, with respect thereto. Each party has waived these rights and has instructed his or her respective attorney not to take any further steps, themselves or through others, in connection with further discovery, inspection, investigation, appraisal or evaluation of the other's income, business, property or other financial circumstances. Each has had a full opportunity and has consulted at length with his or her attorney regarding all of the circumstances hereof and acknowledges

26



that this agreement has not been the result of any fraud, duress or undue influence

exercised by either party upon the other or by any other person or persons upon the other.

Both parties acknowledge that this agreement has been achieved after full disclosure,

competent legal representation and honest negotiations.

## POSSIBLE INVALIDITY

In case any provision of this agreement should be held to be contrary to or invalid

under the law of any country, state or other jurisdiction, said illegality or invalidity shall

not affect in any way any other provisions hereof, all of which shall continue, nevertheless,

in full force and effect, and the provision which is held to be illegal or invalid in any

country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any

country, state or jurisdiction in which such provision is legal and valid.

## INDEPENDENT COVENANTS

Each of the respective rights and obligations of the parties hereunder shall be

deemed independent and may be enforced independently irrespective of any of the other

rights and obligations set forth herein.

## RECONCILIATION AND MATRIMONIAL DECREES

a) This Agreement shall not be invalidated or otherwise affected by a reconciliation

or a resumption of marital relations between the parties unless they have executed and

acknowledged a written statement expressly setting forth that they are cancelling this

Agreement. This Agreement shall not be invalidated or otherwise affected by any decree or

27

judgment made in any court in any pending or future action or proceeding between the parties.

b) Each party agrees that the provisions of this Agreement shall be submitted to any court in which either party may seek a judgment, order or decree in a matrimonial action or any other action or proceeding affecting the marital status of the parties and that the provisions of this Agreement shall be incorporated in said judgment, order or decree with such specificity as the court shall deem permissible and by reference as may be appropriate under law and under the rules of the court. However, not withstanding said incorporation, the provisions of this Agreement shall survive any decree, order or judgment and shall not merge therein, and this Agreement may be independently enforced.

## MODIFICATION AND WAIVER

Neither this Agreement nor any provision hereof shall be amended or modified except by an agreement in writing duly subscribed and acknowledged with the same formality as this Agreement, except as expressly provided herein. Any waiver by either party of any provision of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instances upon the strict performance of any of the provisions of this Agreement by the other party shall not be construed as a waiver or relinquishment for the future of such provision, but the same shall continue in full force and effect.

## LEGAL INTERPRETATION

28

This Agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of New York as an agreement made and to be performed within said State.

## CHANGE OF ADDRESS

The parties hereby agree that each will notify the other by registered or certified mail, return receipt requested, of any change of address, and/or telephone number, within five (5) days of the date of such change.

## IMPLEMENTATION

Each party promptly, upon request by the other party, shall make, execute and deliver any and all other and further instruments as may be necessary or desirable for the purpose of giving full force and effect to the provisions of this Agreement without charge therefor.

## MUTUAL RELEASE AND DISCHARGE OF CLAIMS IN ESTATES

Except as herein otherwise provided, each party hereby releases, waives and relinquishes forever and for all purposes any and all rights which he or she may now have, or may hereafter acquire, as the other party's spouse, under the present or future laws of any jurisdiction or any statute or custom to share in the property or estate of the other wheresoever situated as a result of the marital relationship or whether acquired before or subsequent to marriage or before or subsequent to date of this Agreement by reason of his or her inheritance or descent including the right to equitable distribution or distributive

29

award, dower, curtesy or community property under any Will or testamentary writing heretofore or now in existence (a) to share in the estate of the other party upon the latter's death; and (b) to act as executor, administrator or legal representative of the other party's estate. This provision is intended to, and shall constitute, a mutual waiver by the parties to take under any existing Will or testamentary writing of the other or to take against each other's Wills or testamentary writings, heretofore or now in force, under the present or future laws of any jurisdiction whatsoever. The consideration for each party's waiver and release is the other party's reciprocal waiver and release. The parties intend, by the aforedescribed waiver and release, to relinquish any and all rights in and to each other's estate, including the rights of set-off now provided in Section 5-3.1 of the ESTATES, POWERS AND TRUSTS LAW of the State of New York, and any distributive shares presently provided in Section 4-1.1 of the ESTATES, POWERS AND TRUSTS LAW and all rights of election presently provided for in Section 5-1.1 of said law or any prior or subsequent similar provision of this or any other jurisdiction including, without limitation, the right to equitable distribution or distributive award, dower, curtesy or community property under any Will or testamentary writing now in existence unless the same is reaffirmed by redating after the date hereof.

Notwithstanding any of the foregoing provisions, either party may serve as executor or legal representative of the estate of the other or accept a specific bequest, if provision therefore is made, in the other party's Will, executed or reaffirmed subsequent to the date of the execution of this Agreement.

However, the foregoing shall not bar a claim on the part of either party against the other as set forth above for any cause or causes arising out of a breach of this Agreement during the lifetime of the deceased party against whose estate such claim may be made.

Each party will, whenever requested by the other party, execute, acknowledge and deliver any instruments which are necessary to effectuate the understandings, waivers, releases and discharges provided herein. Each party, in the event of death of the other party, whether such party dies testate or intestate, will, whenever required by the executors, administrators or other legal representatives, execute any waiver of his or her right of election against the Last Will and Testament of the other, curtesy and other rights to take as distributive heir or next of kin and the like as may be required to effectuate the terms hereof.

## ENTIRE UNDERSTANDING

This Agreement contains the full understanding of the parties who hereby acknowledge that there have been, and are no representation, warranties, covenants or undertakings, other than those expressly set forth herein. The parties agree that if a Memorandum of this Agreement shall be executed upon the signing hereof, the same may be filed in office of the County Clerk of the County in which the marital residence is located.

## DUPLICATE ORIGINALS

This Agreement may be executed in multiple counterparts, each of which so executed shall be deemed an original and shall constitute one and the same Agreement.

31

THIS AGREEMENT shall be effective as of the date endorsed upon the first page hereof.

IN WITNESS WHEREOF the parties hereto have hereunder set their respective hands and seals the day and year indicated after their signatures.

_____ L.S.     DATE: 2/15/01
LAURIE A. WAGNER

_____ L.S.     DATE: 2-15-01
WALTER G. WAGNER

32

STATE OF NEW YORK)
COUNTY OF SUFFOLK) ss.:

On the 15th day of February in the year 2001 before me, the undersigned, personally appeared, WALTER G. WAGNER personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

PAUL M. KILLIAN
NOTARY PUBLIC, State of New York
No. 4987350, Suffolk County
Commission Expires October 15, 19— 2001

**Notary Public**

STATE OF NEW YORK)
COUNTY OF SUFFOLK) ss.:

On the 15th day of February in the year 2001 before me, the undersigned, personally appeared LAURIE A. WAGNER personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**Notary Public**

BARBARA JANE KELLY
Notary Public, State of New York
No. 02KE5030232
Qualified in Suffolk County
Commission Expires July 11, 19—
2002

33

### AFFIDAVIT OF WALTER G. WAGNER

STATE OF NEW YORK )
COUNTY OF SUFFOLK) ss.:

WALTER G. WAGNER, being first duly sworn, according to law, deposes and says that he is the individual described as the "Husband" in the foregoing instrument and makes his Affidavit in acknowledgment thereof.

1.  That he has read the Separation Agreement, word for word, paragraph by paragraph.

2.  That he understands its contents.

3.  That he understands and appreciates the legal effect of his signature to this Separation Agreement.

4.  That this Separation Agreement completely and perfectly expresses his understanding of the terms of the settlement which he has arrived at with his Wife.

5.  That this Separation Agreement expresses the entire understanding and agreement between himself and his Wife, without any secret promises or other agreements or inducement, not therein expressed or stated.

6.  That his assent to this Separation Agreement was reached after mature deliberation and after consultation with counsel.

7.  That his execution of this Separation Agreement is his own free act and deed.

8.  That this Separation Agreement is not the result of any collusion between himself and his Wife or between himself and any third person or persons.

9.  That neither the property settlement arrived at between him or his Wife, nor his

34

signing and acknowledging of the foregoing Separation Agreement was occasioned, brought about or influenced by the use of any duress, coercion or undue influence practiced, brought or exercised upon him in any manner by any person whomsoever.

10. That he is not under the influence of any drugs or alcohol.

*WALTER G. WAGNER*

Sworn to before me this 15th day of February 2001.

*Notary Public*

PAUL M. KILLIAN
NOTARY PUBLIC, State of New York
No. 4987350, Suffolk County
Commission Expires October 15, 19 2001

35

## AFFIDAVIT OF LAURIE A. WAGNER

STATE OF NEW YORK )
COUNTY OF SUFFOLK) ss.:

LAURIE A. WAGNER, being first duly sworn, according to law, deposes and says that she is the individual described as the "Wife" in the foregoing instrument and makes her Affidavit in acknowledgment thereof.

1. That she has read the Separation Agreement, word for word, paragraph by paragraph.

2. That she understands its contents.

3. That she understands and appreciates the legal effect of her signature to this Separation Agreement.

4. That this Separation Agreement completely and perfectly expresses her understanding of the terms of the settlement which she has arrived at with her Husband.

5. That this Separation Agreement expresses the entire understanding and agreement between herself and her Husband, without any secret promises or other agreements or inducement, not therein expressed or stated.

6. That her assent to this Separation Agreement was reached after mature deliberation and after consultation with counsel.

7. That her execution of this Separation Agreement is her own free act and deed.

8. That this Separation Agreement is not the result of any collusion between herself and her Husband or between herself and any third person or persons.

36

9. That neither the property settlement arrived at between her or her Husband, nor her signing and acknowledging of the foregoing Separation Agreement was occasioned, brought about or influenced by the use of any duress, coercion or undue influence practiced, brought or exercised upon her in any manner by any person whomsoever.

10. That she is not under the influence of any drugs or alcohol.

_Laurie A. Wagner_
LAURIE A. WAGNER

Sworn to before me this 15 th
day of February , 2001.

_Barbara Jane Kelly_
Notary Public

BARBARA JANE KELLY
Notary Public, State of New York
No. 02KE5030232
Qualified in Suffolk County
Commission Expires July 11, 19
2002

37

Exhibit 2

At an IAS Part 3 of the Supreme
Court of the State of New York, Suffolk
County, located at the Courthouse at
400 Carleton Avenue, Central Islip,
New York on November 12, 2002

PRESENT: Thomas F. Whelan

_____ x

LAURIE A. WAGNER,
(SS#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)

                    Plaintiff,                 Index No. 02-16870

   - against -
                                          **JUDGMENT OF DIVORCE**

                                          200201988 um

WALTER G. WAGNER,                         ENTERED:   NOV 21 2002
(SS#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)
                                          AT:        9:39 AM
                    Defendant,
_____ x

The Plaintiff having brought this action for a judgment of absolute divorce

by reason of the Separation Agreement between the Plaintiff and the Defendant for

a period of more than one year; and the Summons bearing the notation "ACTION

FOR A DIVORCE", and the Verified Complaint of the Plaintiff having been duly

served upon the Defendant personally within this State; and the Defendant having

submitted an affidavit waiving the time to answer and consenting to the divorce and

the relief sought in the Plaintiff's summons and verified complaint and consenting

that the matter be placed on the uncontested matrimonial calendar; and the

Plaintiff having applied to this Court for judgment for the relief demanded in the

Summons and Verified Complaint; and the Plaintiff having presented written proof

of service and an affidavit in support of the essential allegations of the complaint;

and the Court having accepted written proof of non-military service; and this Court

1

having considered such proof and rendered its separate findings of fact and conclusions of law of even date herewith;

NOW, on motion of BARBARA JANE KELLY, the attorney for the Plaintiff, it is

ADJUDGED that the marriage between the Plaintiff, LAURIE A. WAGNER and the Defendant, WALTER G. WAGNER, is dissolved by reason of a Separation Agreement between the Plaintiff and the Defendant for a period of more than one year, in accordance with Subdivision (6) of Section 170 of the Domestic Relations Law; and it is further

ORDERED, ADJUDGED, AND DECREED, that the Plaintiff and the Defendant shall have joint legal custody and the Plaintiff shall have primary physical custody  of the infant issue of the marriage, to wit: DAVID ROGER WAGNER born on June 2, 1986; KAITLYN MARIE WAGNER born on December 6, 1988 and JONATHAN STEVEN WAGNER born on January 15, 1991 and it is further

ORDERED, ADJUDGED AND DECREED, that the Defendant shall have rights of visitation of the infant issue in accordance with the Agreement of Separation entered into between the parties on the 15th day of February, 2001, and it is,

ORDERED, ADJUDGED AND DECREED, that

a. the basic child support obligation in this case is $313.75 per week;

b. The non-custodial parent's pro rata share is $257.28 per week. The parties

2

have voluntarily agreed to child support for the children, DAVID ROGER

WAGNER born on June 2, 1986; KAITLYN MARIE WAGNER born on December

6, 1988 and JONATHAN STEVEN WAGNER born on January 15, 1991 in the

sum of $257.28 per week, such stipulation reciting in compliance with DRL Section

240 (1-b);

    1. The parties have been advised of the provisions of the DRL Section 240 (1-

b); and

    2. The amount of child support provided for herein conforms to the

presumptive amount of the basic child support obligation determined pursuant to

the guidelines of the Child Support Standards Act.

    3. The defendant has received a copy of the Child Support Standards Chart

promulgated by the Commissioner of Social Services.

    4. The presumptive amount of basic child support which amount of child

support recited above is $257.28 per week.

    5. The Husband shall promptly pay each installment of the child support

provided herein in cash or by good check or postal money order directly to the wife

or to the Suffolk County Child Support Collection Unit if Wife elects to receive

payments through that Unit.

    ORDERED, ADJUDGED AND DECREED that the ~~plaintiff~~ *defendant* shall pay to the

plaintiff as and for child support until the emancipation of the child as that term is

defined in the ~~stipulation of settlement~~ *Separation agreement* entered into between the parties, the sum of

$257.28 per week until the emancipation of the children in accordance with the

3

Separation agreement

stipulation of settlement entered into between the parties on the 29th day of April, February 2001

2002, and it is,

ORDERED, ADJUDGED AND DECREED that the Husband shall pay

maintenance to the wife of $338.00 per month from the date of the signing of the

Separation Agreement on February 15, 2001 until five years from the date, as stated

in the Agreement of Separation, and it is

ORDERED, ADJUDGED, AND DECREED that the agreement entered into

between the parties on the 15th day of February, 2001, copy of which is on file with

the Court and incorporated in this judgment by reference, shall survive and not be

merged in this judgment, and the parties hereby are directed to comply with every

legally enforceable term and provision of such agreement including any provision to

submit an appropriate issue to arbitration before a single arbitrator, as if such term

or provision were set forth in its entirety herein, and the Court retains jurisdiction

of the matter concurrently with the Family Court for the purpose of specifically

enforcing such of the provisions of these stipulations as are capable of specific

enforcement, to the extent permitted by law, and making such further judgment

with respect to maintenance, support, custody or visitation as it finds appropriate

under the circumstances existing at the time application for that purpose is made to

it, or both; and it is further,

ORDERED AND ADJUDGED that the Plaintiff may resume use of her

maiden name, WILLIAMS or any other former surname.

4

CC # : C11-47741

# COUNTY CLERK'S OFFICE
## STATE OF NEW YORK
### COUNTY OF SUFFOLK

I, JUDITH A. PASCALE, Clerk of the County of Suffolk and the Court of Record thereof do hereby certify that I have compared the annexed with the original **JUDGMENT**

filed in my office on **11/21/2002**

and, that the same is a true copy thereof, and of the whole of such original.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of said County and Court this **12/22/2011** .

SUFFOLK COUNTY CLERK

JUDITH A. PASCALE

SEAL

ENTER

J.S.C.

Thomas F. Whelan

GRANTED

NOV 12 2002

Edward P. Romaine

By

B-4

S

Exhibit 3

Case 8-14-08291-ast    Doc    Filed 10/23/14    Entered 10/23/14 14:51:49
*Lauren Jean Kelly*
ATTORNEY AT LAW

## MODIFICATION OF SEPARATION AGREEMENT

AGREEMENT made this *18th* day of *MAY*, 2003 between LAURIE A.

WAGNER presently residing at 24 Ashland Street, , Mount Sinai, New York 11776,

hereinafter referred to as the "Plaintiff"; and WALTER G. WAGNER residing at 92

Linden Street, Massapequa Park, New York 11762, hereinafter referred to as the

"Defendant."

### WITNESSETH:

WHEREAS, the parties entered into a Separation Agreement on the 15th day of

February, 2001 and said Agreement was recorded in the Office of the Suffolk County Clerk

on the 8th day of March, 2001.

WHEREAS, the parties hereto desire to modify the Separation Agreement dated

February 15, 2001 as follows:

A. MARITAL RESIDENCE: Delete Paragraphs b) through g). Add Section h):

HUSBAND and WIFE hereby represent that the WIFE shall exercise her option to buy out

the marital residence from the HUSBAND and shall refinance the marital residence on or

about May, 2003. Upon the signing of this Modification of Separation Agreement, and at

closing of the refinancing on the marital residence, WIFE shall give to HUSBAND the sum

of FIFTY THOUSAND ($50,000.00) DOLLARS AND NO/CENTS as and for consideration

for HUSBAND'S waiving of right, title or interest to the marital residence and transferring

title on the deed to WIFE to be recorded with the Suffolk County Clerk. In addition,

WIFE represents that she shall give to HUSBAND an additional TWENTY THOUSAND

($20,000.00) DOLLARS AND NO/CENTS, with no interest or penalties added, on or

before the youngest child of the marriage, JONATHAN STEVEN WAGNER born on

January 15, 1991 is emancipated as that term is defined in the Separation Agreement dated February 25, 2001.  It is understood that WIFE may prepay part or all of the TWENTY THOUSAND ($20,000.00) DOLLARS AND NO/CENTS  at any time before JONATHAN STEVEN WAGNER is emancipated and that when payment is completed, Husband shall give Wife a receipt and release in writing of full satisfaction of the final $20,000.00 payment.

WHEREAS, all other terms, conditions and provisions of the Separation Agreement dated February 15, 2001 shall remain in full force and effect as though fully set forth herein.

IN WITNESS WHEREOF, the parties hereto have hereunder set their hands and seals the day and year first above written.

LAURIE A. WAGNER
SS# 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

WALTER G. WAGNER
SS# 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

2

January 15, 1991 is emancipated as that term is defined in the Separation Agreement dated February 25, 2001.  It is understood that WIFE may prepay part or all of the TWENTY THOUSAND ($20,000.00) DOLLARS AND NO/CENTS at any time before JONATHAN STEVEN WAGNER is emancipated and that when payment is completed, Husband shall give Wife a receipt and release in writing of full satisfaction of the final $20,000.00 payment.

WHEREAS, all other terms, conditions and provisions of the Separation Agreement dated February 15, 2001 shall remain in full force and effect as though fully set forth herein.

IN WITNESS WHEREOF, the parties hereto have hereunder set their hands and seals the day and year first above written.

_Laurie A. Wagner_
LAURIE A. WAGNER
SS# 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

Dup
Orig

COUNTY CLERK'S OFFICE
STATE OF NEW YORK          SS.:
COUNTY OF SUFFOLK

I, EDWARD P. ROMAINE, Clerk of the County of Suffolk and the Court of Record thereof, do hereby certify that I have compared the annexed with the original _Modification to Sep agreement_ ... FILED in my office ......... _6.12.03_ ............. and, that the same is a true copy thereof, and of the whole of such original.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of said County and Court this ..... _6-12-03_ ..... _Edward P. Romaine_ ..... Clerk.

Form No. 236                                                       12-102.12/89cs

FILED
JUN 12 2003
EDWARD P. ROMAINE
COUNTY CLERK

STATE OF NEW YORK )
COUNTY OF          ) ss.:

On the 19ᵗʰ day of May , in the year 2003, before me, the undersigned, a Notary Public in and for said State, personally appeared WALTER G. WAGNER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Rosemarie Dallacqua_
Notary Public

ROSEMARIE DALLACQUA
NOTARY PUBLIC, State of New York
No. 01DA6075717
Qualified in Suffolk County
Commission Expires, June 10, 2006

STATE OF NEW YORK )
COUNTY OF SUFFOLK) ss.:

On the 8ᵗʰ day of May, 2003 , in the year 2001, before me, the undersigned, a Notary Public in and for said State, personally appeared LAURIE A. WAGNER personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_Karen Bell_
Notary Public

KAREN BELL
Notary Public, State of New York
No. 4939981
Qualified in Suffolk County
Commission Expires _8/1/00_

3

Exhibit 4

Index No. 16870/02

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

PRESENT:        Hon. Jennifer A. Buetow
                         Special Referee
————————————————————————X

LAURIE A. WAGNER,

                                          Plaintiff,

                   -against-

WALTER G. WAGNER,

                                          Defendant.
————————————————————————X

**DECISION AND ORDER**

Plaintiff's Attorney
J. Gary Waldvogel, Esq.
732 Smithtown by-Pass
Suite A54
Smithtown, NY 11787

Defendant's Attorney
Gregory Rabinowitz, P.C.
400 Jericho Tpke., Ste. 222
Jericho, NY 11753

The above-captioned matter was referred to the undersigned by the Hon. Andrew A. Crecca by Order dated January 28, 2014 to hear and determine "all post judgment issues pending as per the respective application of the parties." The parties agreed to bifurcate the hearing and hear the defendant's application first. The plaintiff's application was adjourned for hearing to September 17, 2014. At the hearing, three (3) exhibits were marked as Court Exhibits, plaintiff marked one (1) exhibit into evidence and the defendant marked two (2) exhibits into evidence.

The parties were divorced by Judgment of Divorce entered on November 21, 2002. Said Judgment incorporated but did not merge the parties' Separation Agreement executed on February 15, 2001. In or about May 18, 2003, the parties entered into a Modification of Separation Agreement.

As it pertains to the instant matter, the Modification of Separation Agreement states:

> A. MARITAL RESIDENCE: Delete Paragraph b) through g). Add Section h): HUSBAND and WIFE hereby represent that the WIFE shall exercise her option to buy out the marital residence from the HUSBAND and shall refinance the marital residence on or about may 2003. Upon the signing of this Modification of Separation Agreement, and at closing of the refinancing on the marital residence, WIFE shall give to HUSBAND the sum of FIFTY THOUSAND ($50,000.00) DOLLARS AND NO/CENTS as and for consideration for HUSBAND'S waiving the right, tile or interest to the marital residence and transferring title on the deed to WIFE to be recorded with the Suffolk County Clerk. In addition, WIFE represents that she shall give to HUSBAND an additional TWENTY THOUSAND ($20,000.00) DOLLARS AND NO/CENTS, with no interest or penalties added, on or before the youngest child of the marriage, JONATHAN STEVEN

1

WAGNER born on January 15, 1991 is emancipated as that
term is defined in the Separation Agreement dated February
25, 2001...

The Separation Agreement dated February 25, 2001 defines emancipation, in
pertinent part, as "[t]he child attaining the age of twenty-one years, unless the child is
attending college full time, and if so, then at the end of the academic year following the
child's twenty-first birthday."

In the case at bar it is unrefuted that the plaintiff never gave the defendant
$20,000.00 as outlined in the Modification of Separation Agreement. The plaintiff offers
no defense as to her failure to pay same. The issue before the Court, therefore, is
whether said payment should have been made on or about January 15, 2012 when
Jonathan turned twenty-one years of age or sometime in May 2012 when Jonathan
allegedly finished his Spring semester at Suffolk County Community College (hereinafter
SCCC).

The plaintiff avers that Jonathan attended SCCC in the Spring of 2012 as a full
time student. In support of her position, the plaintiff introduced a bill from SCCC dated
July 10, 2012 indicating, in sum and substance, that Jonathan paid for Full-Time tuition
at SCCC for the Spring of 2012 via a Direct Loan and a TAP Grant (Plaintiff's No. 6). It
further indicates that Jonathan was scheduled to take four (4) classes totaling twelve
(12) credits (Plaintiff's No. 6). Admittedly, the plaintiff did not recall how she came into
possession of this document and has absolutely no personal knowledge regarding
Jonathan's matriculation at SCCC in the Spring of 2012. The record is silent as to
whether Jonathan actually attended SCCC in the Spring of 2012, completed his twelve
credit course load or even completed part of his course load.

After examining and inquiring into the facts and circumstances of the case and
hearing the proof and testimony offered in relation thereto, the Court finds that the
plaintiff has failed to establish that Jonathan was a full time student at SCCC in the
Spring of 2012. A bill indicating that Jonathan paid for full time tuition does not suffice
as the record is silent as to whether Jonathan ever actually attended SCCC in the Spring
of 2012 and/or completed any of his courses.

Accordingly, it is

ORDERED that the plaintiff shall pay the defendant $20,000.00 together with
statutory interest at nine percent (9%) retroactive to January 15, 2012 within thirty (30)
days of the instant Decision. If said sum is not paid, the appropriate paperwork may be
submitted to the clerk of the court for signature.

The parties have agreed to submit the issue of counsel fees on paper.

Normally, a hearing is required before the Court can award counsel fees,
Sadofsky v. Sadofsky, 78 A.D.2d 520 (2nd Dept., 1980); Stern v. Stern, 114 A.D.2d 408
(2nd Dept., 1985); Wood v. Wood, 73 A.D.2d 963 (2nd Dept., 1980). However, in this
instance, the parties have stipulated to have the Court determine the issue of fees on
the basis of the papers submitted. Entwistle v. Entwistle, 92 A.D.2d 879 (2nd Dept.,
1983); Ryan v. Ryan, 92 A.D.2d 889 (2nd Dept., 1983).

The award of reasonable counsel fees is a matter within the sound discretion of
the trial court. DeCabrera v. Cabrera-Rosete, 70 N.Y.2d 879 (1987); Walker v. Walker,

2

255 A.D.375 (2nd Dept., 1998). It is well settled that in determining the issue of counsel fees, the Court must consider the nature and extent of the services; the actual time spent and the necessity therefore; the nature of the issues involved; the amount of the fee involved; the professional standing of counsel; the results achieved and the financial needs and circumstances of the parties. Rubenstein v. Rubenstein, 137 A.D.2d 523 (2nd dept., 1988); Ahern v. Ahern, 94 A.D.2d 53 (2nd Dept., 1983).

The parties Separation Agreement, reads, in pertinent part:

> ...[I]f either party should default in any of his or her obligations hereunder, or should unsuccessfully challenge the validity of this agreement or it interpretation, then said party shall be liable for all damages (including those caused by delayed payments), costs and expenses of the other party as a result thereof, including but not limited to **reasonable attorneys' fees**. (emphasis added)

In the case at bar, the defendant's attorney, Mr. Rabinowitz, is a well respected and experienced practitioner in the field of matrimonial law. The hourly rate charged by defendant's counsel appears to be in keeping with the customary hourly rate charged by other law firms of similar qualifications for similar matters. Prior to commencing the instant action, the defendant attempted to resolve the instant issue but to no avail. Not only did the plaintiff ignore her obligation to pay, she also ignored the defendant's overtures to resolve the matter. Moreover, despite having no defense for her failure to pay, but for when the actual payment was due, the plaintiff forced the defendant to file the instant action and caused the matter to go to trial. Notwithstanding same, the issue before the Court was in no way complex. In fact, it could not have been more straightforward. To generate counsel fees, therefore, in the amount of $20,747.00 when one is only seeking to recover $20,000.00 plus some statutory interest is unreasonable.

Wherefore, given the preceding, the Court finds that the defendant is entitled to an award of attorneys' fees in the amount of $5,000.00. Said sum shall be paid to the defendant within sixty (60) days of the date of the instant Decision. If said sum is not paid, the appropriate paperwork may be submitted to the clerk of the court for signature.

The foregoing constitutes the Decision and Order of this Court.

JENNIFER A. BUETOW
Jennifer A. Buetow
Special Referee

Dated:      June 19, 2014
            Central Islip, New York

---

[1] The plaintiff never denied that she failed to pay the defendant the monies due and owing pursuant to the Modification Agreement. She simply averred that there were certain offsets. The plaintiff's cross-motion in this regard is scheduled for a hearing on September 17, 2014.

Exhibit 5

MACCO & STERN, LLP
Attorneys At Law
135 Pinelawn Road
Suite 120 South
Melville, New York 11747
www.maccosternlaw.com

Michael J. Macco
Richard L. Stern

Peter Corey
Cooper J. Macco

Telephone (631) 549-7900
Facsimile (631) 549-7845

1 October, 2014

J. Gary Waldvogel, Esq.
732 Smithtown By-Pass, Suite A54
Smithtown, NY 11787

        Re: Laurie A. Wagner
        Index #: 1687/02

Dear Mr. Waldvogel:

        Confirming the message left on your telephone, I have reviewed the bankruptcy petition filed by the above-referenced debtor and be advised that all liability that comes due under a divorce decree or separation agreement is a non-dischargeable debt. The bankruptcy filing of Ms. Wagner, if she receives a discharge, will not discharge this type of liability. It should not be necessary for my client to bring an adversary proceeding to have the Bankruptcy Court issue a written decision mirroring what Section 523 states. I am asking you to sign the bottom of this letter acknowledging that you agree that the liability due Walter G. Wagner and his attorney, Gregory Rabinowitz, has not been discharged by this bankruptcy. If you do not make such an agreement, I will have no choice but to commence an adversary proceeding at which time Bankruptcy Judge Trust will require your appearance, including pre-trial orders, memorandums and trial. It would be a tremendous savings of unnecessary time and expense for your just to execute the bottom of this letter. If you should have any questions, please don't hesitate to contact me.

                                    Very truly yours,

                                    Michael J. Macco

MJM/cs

**Agreed that the debt due Walter G. Wagner
and Gregory Rabinowitz, P.C. is not discharged
in Chapter 7 bankruptcy.**

_____

**J. Gary Waldvogel**

# EXHIBIT D

# UNITED STATES BANKRUPTCY COURT
## Eastern District of New York

*NOTE: All documents filed in this matter must be identified by both*
*adversary and bankruptcy case numbers, case chapter and judge's initials.*

In re: Laurie A Wagner

Walter G Wagner

Bankruptcy Case No.: 8−14−74245−ast

Plaintiff(s),

−against−
Laurie A Wagner

Adversary Proceeding No. 8−14−08291−ast

Defendant(s)

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days.

| Address of Clerk: |
| --- |
| **United States Bankruptcy Court**<br>**290 Federal Plaza**<br>**Central Islip, NY 11722** |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of<br>Plaintiff's Attorney: |
| --- |
| **Michael J Macco**<br>**Macco & Stern LLP**<br>**135 Pinelawn Road**<br>**Suite 120 South**<br>**Melville, NY 11747** |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

Dated: October 24, 2014

Robert A. Gavin, Jr., Clerk of the Court

Summons (AST)[Summons and Notice of Pretrial Conf. rev. 03/16/2009]

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

In re:

              Case No. 14-74245 (AST)

LAURIE A. WAGNER,

              Chapter 7

              Debtor.

------------------------------------------------------------------ x

WALTER G. WAGNER,

              Plaintiff,

              Adv. Pro. No. 14-08291-ast

– against –

LAURIE A. WAGNER,

              Defendant.

------------------------------------------------------------------ x

AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                    )
COUNTY OF SUFFOLK   )   ss.:

      Carol Smith, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides at West Islip, New York.

      On October 28, 2014, deponent served true copies of the following:

           SUMMONS AND COMPLAINT IN AN
           ADVERSARY PROCEEDING WITH EXHIBITS

upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of same, enclosed in a post-paid properly addresses wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

*U.S. Trustee*
*Long Island Federal Courthouse*
*560 Federal Plaza, Room 560*
*Central Islip, NY  11722-4437*

*R. Kenneth Barnard, Esq.*
*3305 Jerusalem Avenue, Ste. 215*
*Wantagh, NY 11793*

*J. Gary Waldvogel, Esq.*
*Waldvogel and Peterson, Esqs.*
*732 Smithtown Bypass*
*Smithtown, NY 11787-5020*

*Laurie A. Wagner*
*24 Ashland Street*
*Mt. Sinai, NY 11766*

                                        */s/ Carol Smith_____*
                                          *Carol Smith*

Sworn to before me this
28th day of October, 2014

*/s/ Janine M. Zarrilli____*
Notary Public, State of New York
No. 01ZA5084708
Qualified in Nassau County
Commission Expires September 8, 2017

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

In re:

LAURIE A. WAGNER,

                            Debtor.

------------------------------------------------------------------- x

WALTER G. WAGNER,

                            Plaintiff,

            – against –

LAURIE A. WAGNER,

                            Defendant.

------------------------------------------------------------------- x

Case No. 14-74245 (AST)

Chapter 7

Adv. Pro. No. 14-08291-ast

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                           )
                           )      ss.:
COUNTY OF SUFFOLK    )

        Carol Smith, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides at West Islip, New York.

        On December 11, 2014, deponent served true copies of the following:

                NOTICE OF PRESENTMENT OF AN ORDER
                DIRECTING ENTRY OF A DEFAULT JUDGMENT

upon the following parties, at the addresses designated by said parties for that purpose, by depositing a true copy of same, enclosed in a post-paid properly addresses wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York:

*U.S. Trustee*
*Long Island Federal Courthouse*
*560 Federal Plaza, Room 560*
*Central Islip, NY  11722-4437*

*R. Kenneth Barnard, Esq.*
*3305 Jerusalem Avenue, Ste. 215*
*Wantagh, NY 11793*

*J. Gary Waldvogel, Esq.*
*Waldvogel and Peterson, Esqs.*
*732 Smithtown Bypass*
*Smithtown, NY 11787-5020*

*Laurie A. Wagner*
*24 Ashland Street*
*Mt. Sinai, NY 11766*

                                          */s/ Carol Smith*
                                           *Carol Smith*


Sworn to before me this
11th day of December, 2014

*/s/ Janine M. Zarrilli*
Notary Public, State of New York
No. 01ZA5084708
Qualified in Nassau County
Commission Expires September 8, 2017